UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YOLANDA C. GIBSON-MICHAELS,          *
     Plaintiff,                                *
                                                   *
     v.                                         *          CASE NO. 1:06CV01933 (RMU)
                                                   *
DOUGLAS FAHEY ET AL.                     *
     Defendants.                            *

*   *   *   *   *   *   *   *   *   *   *   *

**Fahey's Reply to Opposition to Motion to Dismiss**

COMES NOW DEFENDANT Douglas Fahey, by undersigned counsel, and files this Reply to Plaintiff's Opposition to Fahey's Motion to Dismiss[1] and states:

1.  Plaintiff's Complaint described itself as being for "negligence, defamation of character and unauthorized interception of oral communications" Complaint at 1 (Caption).  But the Complaint also mentions 16 statutes which Plaintiff states Defendant violated.  *Id.* at 3.  None of these have anything to do with "negligence"; their connection to a claim of "defamation" is unclear at best and Plaintiff's opposition does not help.

2.  While, the Plaintiff's Opposition Brief is confusing, oftentimes disjointed, and frequently off-target, what does seem clear (at least for purposes of this Motion)

---

[1] Undersigned received a faxed copy of Plaintiff's Opposition on January 5 2007, despite the faxed header being dated January 4, 2007.  Undersigned Counsel's copy contains a certificate of service indicating it was mailed on  January 5, 2006, but the US Mail postage label indicates that it was stamped on January 8, 2007.   Regardless, undersigned only received it yesterday, January 11, 2007.  Counsel for the Security Guard Defendants apparently received the Opposition Brief on January 9, 2007 and sent it to undersigned on January 10, 2007.  A true and correct copy of the Plaintiff's Opposition Brief, as it was received by undersigned counsel, and a copy of the envelope in which it came in, is attached hereto as Exhibit A.

is that Ms. Johnson carried a tape recorder in her purse and recorded conversations she had with Plaintiff as part of an FDIC-requested investigation into allegations of work place threats.[2] *Id.* at 4.

3. Plaintiff also clearly alleges that Mr. Fahey asked her to do this as part of his job, which was to be an Investigator for the Plaintiff's employer. *Id.  See also* Plaintiff's Opposition at 7.

4. In his Motion to Dismiss, Mr. Fahey has demonstrably established as a matter of law that he did not act unlawfully when he requested Ms. Johnson to tape record her conversation with the Plaintiff as part of the investigation into what Ms. Johnson perceived to be the Plaintiff's work-place threats. *See* 18 U.S.C. 2511(c) and (d) (generally permitting a person, whether or not "acting under color of law," to intercept an oral communication where such person is a party to the communication); *see also* D.C. Code 23-542(b)(2) and (3) (same). While the Plaintiff generically cites "18 U.S.C. Section 119"—presumably a reference to Chapter 119 of Title 18 of the United States Code—as prohibiting the "interception" of any oral communication (see Plaintiff's Opp. at 5), she ignores the specific

---

[2]  The documents attached to the Complaint and to Plaintiff's Opposition may provide some context for the Court to better understand the Pro Se Complaint. According to affidavits at Tab 3 of the Plaintiff's Opposition Brief, Ms. Johnson made a report to James T. Lantelme, Assistant General Counsel at FDIC, that the Plaintiff had made certain comments that Johnson perceived as threatening. Mr. Lantelme then initiated an investigation into Ms. Johnson's allegations pursuant to FDIC policies and procedures in place for addressing workplace violence issues. (See Sept. 27, 2004 Affidavit of James T. Lantelme; see also Oct. 4, 2004 Affidavit of Jenikia J. Johnson (detailing the allegations about the Plaintiff that Ms. Johnson made to Ms. Lantelme); Oct. 8, 2004 Affidavit of William A. Kmetz;.) According to documents at Tab 2, Mr. Lahey held the position of "Investigator," whose job responsibilities included "conduct[ing] long-term, short-term, and odd hour investigations," "conduct[ing] interviews," "develop[ing] and follow[ing] leads," "tak[ing] statements," "gather[ing] information and facts," and "prepar[ing] narrative reports" for the FDIC. An FDIC employee, William A. Kmetz, asked Mr. Lahey to investigate the allegations of work-place threats that Ms. Johnson made against the Plaintiff. (See Oct. 8, 2004 Affidavit of William A. Kmetz.)

statutory provisions of Chapter 119, cited by Mr. Fahey that plainly allowed him to seek Ms. Johnson's consent and to facilitate her recording of conversations she personally had with the Plaintiff. Simply put, the Plaintiff fails to allege any facts that, if true, would support her erroneous legal conclusion that Mr. Fahey somehow acted unlawfully in his investigation.

5.  What also seems clear is that Mr. Fahey is being sued in his individual capacity, not as a employee or contractor of the government. *Op cit.* at 1, 2 and 3.[3]

6.  Now, in her Opposition to Fahey's Motion to Dismiss Plaintiff cites Fahey's employer's contract with the FDIC to indemnify the FDIC for "negligence, willful misconduct or breach of fiduciary duty ..." as evidence of something, exactly what is not clear. But Plaintiff has not alleged facts supporting negligence and cannot: Fahey had no duty to Plaintiff so there can be no breach. Nor is there any willful misconduct alleged: Fahey's actions were legal (*see* the discussion of this point in Fahey's Motion to Dismiss at 2-3.) And there Fahey had no fiduciary duty to be breached.

7.  Plaintiff's Due Process plaints about the lack of notice and an opportunity to be heard (Opp. at 10) are contradicted by her own Complaint in which she painstakingly detailed the investigatory steps taken and her responses. Complaint ¶¶ 8-21. *See also* the attachments to the Complaint (untabbed) at pp. 19, 20, 21-26, and

---

[3]    The Plaintiff also does not mention the fact that that any private cause of action that the Plaintiff might be able to assert pursuant to 18 U.S.C. § 2520 is barred by the two year statute of limitations provided in subsection (e) of that statute, and that the allegations of the *Pro Se* Complaint unequivocally demonstrate that the Plaintiff was aware by at least May 11, 2004 that Ms. Johnson had recorded certain conservations that Ms. Johnson had with her.

27-30 of 57 (attachment).

8.  Finally, Plaintiff has not provided any statement describing the alleged defamation by Mr. Fahey.  In her Complaint Plaintiff was been able to document that Ms. Johnson reported to Mr. Fahey that she felt threatened by statements Plaintiff made to her.  *Id.* at 2 *et seq.*  Plaintiff has further documented what steps Mr. Fahey took as a result.  *Id.*

9.  But Plaintiff has not alleged what Mr. Fahey is supposed to have done wrong or that what he has (correctly) done is defamatory.  By the very Complaint filed (and attachments) Plaintiff is only alleging that Mr. Fahey   did his job and reported back to his supervisors.  If this was defamatory, Plaintiff must at least allege *what* was false and therefore defamatory.  She has not, she cannot and the facts alleged in this Complaint do not allege a claim for defamation.

10.  To the extent that the Plaintiff seeks to state a cause of action against Mr. Fahey extending beyond her illegal wiretapping contention, it would appear to rest solely on the Plaintiff's view—unsupported by any specific factual allegations—that the investigation of Ms. Johnson's allegations that the Plaintiff made work-place threats was somehow tainted by negligence or misconduct.  Whether couched in terms of "defamation," or some other tort, however, the Plaintiff again fails to make any specific factual allegations that, if true, would state a cause of action against Mr. Fahey.

For all these reasons, Plaintiff's Complaint should be dismissed because she

has utterly failed to state a claim.

Respectfully submitted,

KAUFMAN LAW,  A Professional Corporation
11350 Random Hills Rd.  Suite 800
Fairfax, VA 22030
703.764.9080
703.764-0014 (fax)
david@dzklaw.com
Counsel for Defendant Doug Fahey

By: _____
David Zachary Kaufman, Bar# 435123

## CERTIFICATE OF SERVICE

I hereby certified that I caused a true and correct copy of the following to be served by first class mail, postage prepaid, on each of the following on December 10, 2006:

Yolanda Gibson-Michaels,          Jenekia J.  Johnson
*Pro Se* Plaintiff                1414 Colony Road
2210 Anvil Lane                   Oxon Hill, MD 20748
Temple Hills, MD 20748            *pro se* Defendant

_____
David Zachary Kaufman



**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS FAX CERTIFICATION COVER SHEET**

**Copies to**:

David Zachary Kaufman, Esq.
Kaufman Law Firm, A Professional Corporation
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030
Douglas Fahey
703-764-0014(Fax)

Scott D. Helsel (D
Walton & Adams, PC
1924 Isaac Newton Square
Reston, Virginia 20190
(703) 790-8016
Counsel for Securiguard/USEC

Shelia C. Bair
Federal Deposit Insurance Corporaiton (FDIC)
550 17th Street, N.W. MB-6029
Washington, D.C. 20429

Kathleen Gunning, Counsel and Tina Lamoreaux, Counsel
Federal Deposit Insurance Corporation (FDIC)
3501 North Fairfax Drive
Arlington, Virginia
(703) 562-2482 (Fax)

Jenekia J. Johnson, Prose Defendant
1414 Colony Road
Oxon Hill, Maryland 20748

Douglas R. Fahey
3716 Dalebrook Drive
Dumfries, Virginia 22015-1804

Patricia Del Marvil
Chairman CEO
Securiguard Incorporation
6858 Old Dominion Drive – Suite 307
McLean, Virginia 22101
**Fax:**    (703) 790-1696
**Fax:**    (804) 643-5970

David L. Marvil
Chairman CEO
USEC Corporation
7531 Leesburg Pike – Suite 402
Falls Church, Virginia  22101
Fax: 301-564-3203
**Fax:**    (703) 790-1698

Robert Feldman, Executive Secretary
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C.  20429

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YOLANDA C. GIBSON-MICHAELS )
      Plaintiff, )
       )
      v. ) Civil Action No.**1:06CV01933**
       )
Douglas R. Fahey, et.al. )
      Defendants )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW, Yolanda C. Gibson-Michaels (prose), Plaintiff in the above-entitled action, and files an Opposition to Defendant's Motion to Dismiss by and through counsel. As ground for this Motion, and support hereof, Plaintiff states the following:

## I.    JURISDICTION AND VENUE

This Court has both subject matter jurisdiction over this action and personal jurisdiction over Plaintiffs' claims pursuant to Electronic Communication Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848, Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. III, §§ 801–804, 82 Stat. 211, 9-7.100 Authorization of Applications for Wire, Oral, and Electronic Interception Orders; Privacy Act, 5 U.S.C. § 552a.

## II.    DEFENDANTS' MOTION TO DISMISS IS MOOT

A motion to dismiss under Rule 12(b) (6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).

Courts have ruled that the issue on a motion to dismiss "is not whether . . . plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims in which all allegations within her Complaint must be taken as true. See Scheuer, 416 U.S. at 236.

Plaintiffs' complaint provides sufficient information to entitle her to pursue claims. Respectfully, Defendants' Motion to Dismiss must be denied to allow Plaintiff's constitutional right to pursue her claims the discovery phase.

Plaintiff has more than sufficiently demonstrated that her claims under the Administrative Procedure Act, 5 U.S.C. § 702 et seq. ("APA"), the Fifth Amendment to the United States Constitution and her assertion of a constitutional right to privacy, all survive.

## III.    **BACKGROUND**

Defendant Douglas R. Fahey (unlicensed) (hereafter "Fahey") and all named Defendants and co-conspirators maliciously with intent engaged into the use of Douglas R. Fahey's falsified credentials while **acting under the color of law** by which Fahey negligently by and through his conducted, violated Plaintiff's right to religious free speech, age, race, and constitutional rights as guaranteed by the First Amendment of the United States Constitution.

Fahey (unlicensed) investigator is a former contract employee simultaneously employed, paid, and contracted with Securiguard, Inc. and USEC Service Corporation contracts while employed at the Federal Deposit Insurance Corporation (hereafter "FDIC) under purchase order P.O. 0300303 Effective Date 9/3/03.   Securiguard is also registered as a **Foreign Profit Corporation** under CT Corporation System FEI Number 541189694 filed on 6/20/2005. **(See Tab 1)**

2

Both contracts were only authorized by the General Services Administration (GSA) to provide **Security Guard Services** at the Federal Deposit Insurance Corporation (FDIC) in the District of Columbia and Virginia.

USEC Corporation is the prime contractor operating under a subcontract with Securiguard. Securigaurd was incorporated in the Commonwealth of Virginia in January 1982. Patricia DeL. Marvil is Chairman/CEO and Secretary and David L. Marvil, CPP, is President and Treasurer. The Corporate headquarters of Securiguard is located at 6858 Old Dominion Drive, Suite 307, McLean, Virginia 22101.
Securiguard and USEC Corporation alias **Commerce Funding Corporation** (hereafter **"CFC"**) is registered as doing business as a **Commerce Funding Services** confirmed by the General Services Administration (GSA) as operating under the a task order work number **99-00086-C-J3** not a contract.

FDIC insured **Security One Banks'** profile of Ms. Del Marvil states, in part, that: "Securiguard's CEO Patricia Del Marvil founder and owner of Securiguard, Inc., have over 30 years experience in security and criminal justice. Over the past 23 years, Ms. Marvil has successfully developed Securiguard into a multi-million dollar corporation. Ms. Marvil has simultaneously served on the board of multiple business organizations, and has assisted Northern Virginia in the development of new business. The Governor of Virginia has appointed her to commissions and boards for the development of special programs for the Commonwealth of Virginia."

3

## IV.   **INDEMNIFICATION**

Defendant attempt to recluse himself from his negligence actions, defamation of

Plaintiff character, Title VII, due process, and constitutional protections afforded to

Plaintiff.  Defendant's contractual Indemnification agreements, license requirements,

warrants, bonds, certifications are clearly articulated in both Securiguard and USEC

Corporation contractual agreement with the Federal Deposit Insurance Corporation,

under Article XI. Indemnification, page 16 of the USEC Corporation contract (attached

herein) clear states, in part, that:

> **"Contractor agrees to indemnify, <u>Hold Harmless</u>, and <u>Defend</u> the <u>FDIC</u> <u>in all</u> <u>of its capacities</u>, and <u>all of its officers</u>, <u>directors</u>, and <u>employees</u> against any and all claims, losses, penalties, fines, forfeitures, amounts paid in settlement, judgments, reasonable attorneys' fees and related litigation, costs, fees, expenses which result from any act or omission constituting <u>negligence</u>, <u>willful misconduct</u> or <u>breach of fiduciary duty by any officer</u>, <u>director</u>, <u>agents</u> or employees of Contractor or its subcontractors in connection with Contractor's performance under this contract."**

Plaintiff's complaint clearly provided evidence that Douglas R. Fahey did not

have a licensed, was paid under both Securiguard and USEC Coproation contracts, and

violated Articles I, VII, Scope, suitability, standards of conduct to and including other

articles under the Securiguard contract. **(See Tab 2)**

*4*

Plaintiff provided evidence throughout her complaint confirmed by sworn FDIC of James T. Lantelme, Assistant Director, which he stated, in part, that:

> **"I am unaware who informed Ms. Gibson-Michaels that she was the subject of an administrative investigation. To the best of my knowledge the resultant investigation was <u>conducted by investigator Fahey</u> and Mr. Kmentz. <u>I was not involved in the resultant investigation or the investigative decisions made by Investigator Fahey</u> and Ms. Kmentz"**

FDIC official William Kmentz clearly stated by sworn affidavit, in part, that:

**"<u>Mr. Fahey was a contract investigator with the Securiguard Corporation. Mr. Fahey was in charge of investigation. Mr. Fahey conducted interviews in connection with the allege threat investigation.</u>**

Jenekia J. Johnson stated on page 3 of 5 of her sworn affidavit that: "During the morning of April 15, 2004, **<u>I was interviewed by Investigator Fahey</u>** about the theft and my conversations with Ms. Gibson-Michaels. **<u>He asked me to take a hidden electronic recorder with me and engage in a conversation with Ms. Gibson-Michaels about her threats to me. He stated that if I did not take a hidden electronic recorder with me when I spoke to Ms. Gibson-Michaels</u>**, it would be Ms. Gibson-Michaels' word against mine regarding Ms. Gibson-Michaels' threats." Federal law makes it a crime to intentionally intercept, attempt to intercept or have someone else intercept on one's behalf any wire, oral, or electronic communication. 18 U.S.C. Section 119. Jenekia J. Johnson confirmed that Douglas R. Fahey procured her to intercept Plaintiff's oral communication.

Thus Fahey, Johnson and the FDIC were negligent and liable to Plaintiff for damages as a direct result of Douglas R. Fahey's malicious, intent, and gross misconduct.

FDIC Randi L. Mendolsohn stated on page 2 of 5 of her sworn affidavit that: **"Based upon Mr. Fahey's assurances that the use of the secret electronic recorder was legal, I stated, in substance, that from a Human Resources viewpoint, that I did not see any objections regarding the use of the secret electronic recorder in the investigation." (See Tab 3)**

FDICs EEO investigator Barry Cohen provided evidence that Douglas R. Fahey was not employed by Securiguard. Metropolitan Police provided evidence that Fahey was unlicensed. DOJ criminal Division provided evidence that Fahey did not have a court order to engage into a warrantless interception of Plaintiff's oral communication, and FDIC William (Bill) Kmentz confirmed that Fahey refused to speak to EEO investigator Barry Cohen unless he was paid by compensation for his time.

Plaintiff provided evidence to FDIC and the unlicensed contract employee Douglas R. Fahey that Jenekia Johnson confirmed that Plaintiff quoted a bible verse inside a closed door office. Johnson stated on page 18 of the bogus investigative report that: **"saying that things would roll over if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threaten..." (See Tab 4)**

6

Defendants wish to exclude Plaintiff from constitutional protection on the basis that the various precedental decisions analyzing the existence of liberty interests do so primarily in the context of employment cases. See e.g., Roth, 408 U.S. 564; Codd v. Velger, 429 U.S.624 (1977); Doe, 753 F.2d 1092. It is true that the majority of liberty interest cases involve individuals already employed, but there is nothing within the Constitution or the case law that has arisen there from that creates the unnatural schism sought by the defendants. "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." Bolling v. Sharpe, 347 U.S. 497, 499-500; Roth, 408 U.S. at 572.

Plaintiff is entitled to due process and make whole remedies to correct damages to her reputation, future job offers in the wake of allegations that Defendants lied, falsely accused and portrayed Plaintiff as a "Threat" See Reeve Aleutian Airways, Inc. v. United States et al., 982 F.2d 594, 598 (D.C.Cir. 1993).

The law is clear that Plaintiff has a liberty interests when an individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, threats, alcoholism, disloyalty, Communism or subversive acts or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities.

Defendant, Douglas R. Fahey by and through his actions maliciously with intent labeled Plaintiff as a "threat" tarnished Plaintiffs former outstanding career, good name, reputation, honor and integrity when he subjective Plaintiff to a bogus investigative interview, made false statements while acting under the color of law.

7

Fahey's conduct is clearly describe under 18 U.S.C. Section 913 - **Impersonator Making Arrest or Search** "`Whoever falsely represents himself to be an officer, agent, or employee of the United States`, and in such `assumed character arrests` or `detains any person` or in any manner searches the person, buildings, or other property of any person, shall be fined under the title or imprisoned not more than three years, or both. See also **section 912. Officer or employee of the United States**

Plaintiff's complaint clearly established that Fahey while falsely acting under the color of law failed to exercise a duty of care, abused his authority under his assumed identity of being an officer, investigator, employee with police authority and violated Plaintiff's civil, constitutional, parental, age, race with allegations of false statements, entrapment, harassment, intimidation to and including the fact that Plaintiff was denied right to Counsel; and detained Plaintiff against her will for well over 3 hours.

Courts have ruled that liability for negligence takes place when there is:

1. A duty or obligation or care which requires a certain standard of conduct;

2. A failure to conform to that standard of conduct;

3. A reasonable causal connection between the failure to conform to that standard of conduct and

4. An actual loss or injury.

8

## V.    **ARGUMENT**

"A motion to dismiss for failure to state a claim upon which relief can be granted

is generally viewed with disfavor and rarely granted." Doe v. United States Dept. of

Justice, 753 F.2d 1092, 1102 (D.C.Cir. 1985).

For the purposes of such a motion, the facts alleged in the complaint must be

accepted as true, and all factual inferences, ambiguities or doubts concerning the

sufficiency of a claim are to be drawn in the plaintiff's favor. See Scheuer v. Rhodes, 416

U.S. 232, 236 (1979) 753 F.2d at 1102.

The plaintiffs' prospects for retirement, employment, and reinstatement into the

Federal Government after 25 years of sustained outstanding Federal services since 1981

have been irreparably harmed because of the defendants' malicious and outrageous

conduct and actions while falsely acting under the color of law.  Defendants' tactics were

Orwellian in nature, unconstitutional, impermissible by statute and not in accordance to

the rules of law.

## VI.    **DUE PROCESS CLAUSE**

The Due Process Clause of the Fifth Amendment forbids the federal government

from depriving persons of "life, liberty, or property, without due process of law."

"'Liberty' and 'property' are broad and majestic terms. They are among the '[g]reat

[constitutional] concepts ... purposely left to gather meaning from experience....[T]hey

relate to the whole domain of social and economic fact, and the statesmen who founded

this Nation knew too well that only a stagnant society remains unchanged." Board of

Regents v. Roth, 408 U.S. 564, 571 (1971).

The types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that Clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests." Arnett et al. v. Kennedy et al., 416 U.S. 134, 155 (1974).

The Supreme Court has emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government and private parties." County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1716 (1998)(citation omitted). See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992)(noting that the Due Process Clause was intended to prevent government officials "'from abusing [their] power, or employing it as an instrument of oppression'")(citation omitted). This is so "whether the fault lies in a denial of fundamental procedural fairness" or "in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." See Lewis, 118 S.Ct. at 1716.

The Supreme Court's decision in Jenkins v. McKeithen, 395 U.S. 411 (1969) recognized that the public branding of an individual implicates either "liberty" or "property" interests, or that neither can be achieved by the government without following certain procedural safeguards to ensure the elimination of arbitrary or capricious actions.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to her by use of a 3rd party contractor, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

The language above stems from the evolution centuries of holdings from our nation's highest court. The defendants would have this Court unjustly destroy the development of constitutional protections for individuals who have sought to do nothing more than devote their loyalties and service to the federal government. The defendants wish for this Court to isolate named defendants and rule that constitutional safeguards does not exist or apply to Plaintiff.

Under the defendants' theory, she is not worthy of protection as a prose litigant, Federal employee, individual, afro-American in violation of her age, race, and religion as were slaves prior to the Emancipation Proclamation in 1863. As such, she has no Fifth Amendment protection from the government and named defendants stripping away her liberty interests by branding her as "Threat" based on an innocent quotation of a bible verse from the King James Bible inside a 'closed-door' office.

Defendant Douglas Fahey while acting under the color of law denied Plaintiff due process protection, collected information, denied Plaintiff counsel, disseminating malicious accusations to the Workforce Violence Institute CEO Steve Kaufer to and including throughout the Securiguard and USEC 3rd party contractor security guard employees, and willfully caused Plaintiff's picture, personal family members medical information; and Plaintiff's severely autistic son's medical information to be disseminated, circulated, and permanently entered into the FDICs, Seuriguard, and USECs computerized data base.

Defendant imposed a stigma upon Plaintiff that will foreclose future employment opportunities by having placed derogatory information regarding the investigative interview, interception of Plaintiff's oral communication, privacy, unauthorized released of intercepted communication ('tape recording') to the Workforce Violence Institute (3rd party contractor).

Furthermore, plaintiff is required to or will reveal the information as she proceeds through the hiring process which requires declarations of information provided regarding past employment.

Such a deprivation of liberty has been recognized not only where the individual is employed by the state, but where she seeks employment with the Federal, State, and local private or federal agencies. See Waltentas v. Lipper, 636 F.Supp. 331, 337 (S.D.N.Y. 1986), 862 F.2d 414, 421 (2d Cir. 1988). In so ruling, Waltentas relied upon Doe v. United States Civil Serv. Com'n, 483 F.Supp. 539 (S.D.N.Y. 1980), where the plaintiff had been denied a White House fellowship because the defendant had recorded and included false and derogatory statements about her in her file, thus making them a basis for the hiring decision, without affording her the opportunity to refute them.

The Supreme Court decisions concerning the constitutional prohibition against government defamation to and including by third parties (contractors) does not alter or extinguish a right or status previously recognized by state law," id, citing Paul, 424 U.S. at 711, and the "government ['s] action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity." See Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 898 (1961). See also Carmi v. Metropolitan St. Louis Sewer District, 620 F.2d 672 (8th Cir)

13

The factual distinction between an employee and an applicant is irrelevant for the purposes of determining a constitutional liberty interest based on the analysis of the Supreme Court's guidance in Codd, Bishop and Roth.

It is well noted that a liberty interest protected by the Due Process Clause prohibits the government from depriving an individual of government employment on the basis of false charges and then aggravating the injury, and further diminishing employment opportunities, by tarnishing the individual's name and reputation. Waltentas, 636 F.Supp. at 337, quoting United States Civil Serv. Com'n, 483 F.Supp. at 570.

Plaintiff established that she has proven impairment of a liberty interest by named defendant's false statements with the filing of evidence in the original complaint. See Codd, 429 U.S. at 627-28, and that the Defendant (unlicensed) and unauthorized collection of evidence, investigative interview, interception of oral communication were made public, thus harming by deprivation of property right, denied due process, good name, reputation, honor, and integrity of Plaintiff. See Bishop, 426 U.S. at 348. Both requirements have been met by the plaintiffs, as detailed throughout her pleadings. Moreover, the D.C. Circuit has outright recognized the "right of a federal job applicant to seek injunctive relief from an agency's violation of his constitutional rights in general." Hubbard v. U.S. E.P.A. Admin., 809 F.2d 1, 11 (D.C.Cir. 1986).

Subsequently, defendants' acting by his own authority contradicts their argument. See Dziewior v. City of Marengo, 715 F.Supp. 1416, 1423 (N.D.Ill 1989)(noting Seventh Circuit in Perry, 759 F.2d 1271, 1276-82 (7th Cir. 1985) recognized liberty interests have been extended to applicants for governmental employment). The remaining cases cited by the defendants set forth the standards for determining whether a liberty interest has been violated, not whether the right exists.

This Court should explicitly hold that applicants possess Fifth Amendment liberty interest protections.

In its most recent pronouncement, the D.C. Court of Appeals has held that deprivation of a protected liberty interest may be shown either through an adverse employment action in "conjunction" with official defamation ("defamation plus"), or through an adverse employment action in "combination" with an automatic or formal exclusion from some category of employment opportunities, or in combination with largely precluding one from pursuing a chosen career or profession ("stigma plus"). O'Donnell v. Barry, 148 F.3d 1126, 1143-44 (D.C. Cir. 1998), citing Kartseva v. Department of State, 37 F.3d 1524, 1527-29 (D.C.Cir.1994).

Liberty interests arise if an employee is terminated in a manner that **'stigmatizes'** them by impugning their reputations or foreclosing their future employment opportunities," Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C.Cir. 1995), citing Roth, 408 U.S. at 572-73, or, as explained above, when an applicant is denied employment. See e.g., Larry v. Lawler, 605 F.2d 954, 956 (7th Cir. 1978); Velger v. Cawley, 525 F.2d 334, 336 (2d Cir. 1975), rev'd on other grounds sub nom, Codd v. Velger, 429 U.S. 624 (1977); United States Civil Serv. Com'n, 483 F.Supp. at 570-71.

14

Plaintiffs established that she suffered the loss of a **25 year sustained outstanding Federal Government career**, critical health benefits for her severely autistic son with a seizure disorder, future income, and loss of prospective Federal or private employment due to the defendant's malicious and defamatory allegations that she caused a "Feeling of Threat" during a mere quotation from the Bible inside a closed door office to a 25-year old adult involved in a Federal theft.

The D.C. Circuit has "consistently interpreted Paul's 'stigma plus' test to require two forms of government action before a plaintiff can 'transform a [common law] defamation into a [constitutional] deprivation of liberty.'" Mosrie v. Barry, 718 F.2d 1151, 1161-62 (D.C.Cir. 1983).

First, it is indisputable the defamation originated from defendant Douglas R. Fahey acting under the color of law, failure to exercise a duty of care, use common sense and judgment.

Second, there must be a tangible change of status vis-a-vis the government as a result of the stigma. Since the plaintiffs had her employment offers rescinded to and including suffered an involuntary removal from the Federal Government amid allegations of misconduct (i.e., Quotation of a Bible verse) she has been barred from the FDIC, picture has been placed inside a red security book with orders "DO NOT ENTER", embarrassed, ridiculed, shamed and precluded from re-employment with the FDIC and throughout the Federal Government.

*15*

Plaintiff's age, race and the inflammatory malicious defamatory label of causing or being a 'Threat' by named defendants unorthodox investigative interview caused Plaintiff to not overcome the stigma placed upon her but for the willful actions of named Defendant Douglas R. Fahey and Jenekia J. Johnson. Thus, tangible changes of status clearly exist, and the plaintiffs' allegations meet the standards set by this Court.

[T]he principal recent cases from this court in which a government-imposed stigma by its actions or actions of its agents or contractors it was found to have deprived the stigmatized person of a liberty interest involved either loss of employment or foreclosure of a right to be considered for government contracts in common with all other purposes. See Mosrie, 718 F.2d at 1161.

This alone permits the plaintiff to defeat the Defendant's Motion to Dismiss her liberty interest claim. The plaintiffs have clearly asserted that the stigmatizing fact of being labeled as a threat has mentally, physical, and spiritually caused severe damages to Plaintiff.

It does not require Einsteinium intelligence or even a stretch of the imagination to recognize the stigmatizing nature of an applicant failing a required Federal background investigative clearance examination, especially when failure is tantamount to an accusation of being a "Threat" in the workforce which clearly creates an "overwhelming potential for prejudice". Brown v. Darcy, 783 F.2d 1389, 1396 (9th Cir. 1986). Defendant's collection and release of a private intercepted conversation conveyed false impressions among her former colleagues at the Federal Deposit Insurance Corporation (FDIC).

/6

It is well noted that Plaintiff is feature throughout newsletters among the FDICs main office locations and regional offices as an outstanding employee. Plaintiff has been tarnished by Defendant's malicious, reckless, disregard for the truth while acting under the color of law, false credentials, and impersonation of an investigator in which Plaintiff provided clear and convincing evidence that Douglas R. Fahey named defendant was an unlicensed perpetrator and undocumented employee as confirmed by FDICs contract EEO investigator Barry Cohen and USEC Corporation that Fahey was **NOT** employed by Securiguard.

For the purpose of this Motion, the Court must accept these allegations as true. Thus, the conclusory contradictory assertions of the defendants have absolutely no weight.

A threat is defined as "an expression of intention to inflict evil, injury, or damage" A personal discussion of Plaintiff's private life, a quote from the Bible in which **defendant Johnson confirmed she heard plenty of times before** did not give rise to defendant Douglas R. Fahey initiation of an unauthorized interception of Plaintiff's oral communication, investigative interview, 5-day suspension, deprivation of liberty rights, due process, detention for well over 3 hours without counsel, denied Miranda rights and the removal from the United States Federal government.

Defendants should not be permitted to redefine common concepts or words simply to suit its personal and financial interests. The meaning of being label as a 'threat' has been established in an investigative report, tape recorded, disseminated to other 3rd party contractor's i.e, Steve Kaufer CEO of the Workforce Violence Institute, colleague, and associate of Douglas R. Fahey whom are both members of the ASIS Institute.

17

If an applicant for Federal employment fails a background or polygraph test, i.e., deception is indicated, that person is viewed as a liar or a threat. Either they have told the truth or they have not. If they have not, they have lied.

Plaintiff has presented that these are all factual issues that are totally inappropriate to resolve in an initial **Motion to Dismiss**, especially before any discovery has taken place or a hearing before the district court. Therefore, the defendants' motion to dismiss is meaningless.

Defendant's argument is both legally and factually inaccurate on its face.   The Complaint clearly details the stigmatization that has taken place to foreclose employment opportunities against plaintiff with being labeled as a threat.

Plaintiff's complaint has set for several claims sufficient to defeat the defendant's Motion to Dismiss. See Kartseva, 37 F.3d 1524 (D.C.Cir. 1994); See also Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1506 (D.C.Cir. 1995).

The concept of liberty protected by the due process clause has long included occupational liberty - 'the liberty to follow a trade, profession, or other calling.'" Wroblewski v. City of Washburn, 965 F.2d 452, 455 (7th Cir. 1992). Protected liberty interests are implicated "'where government or private contractor's action has operated to bestow [stigma] with an attendant foreclosure from other employment opportunity.'"

The D.C. Circuit endorsed a plaintiff's right to demonstrate to the Court, obviously after discovery, to what extent the stigmatizing reasons for discharge have been conveyed to the public or other government agencies and harmed future employment opportunities.

18

The public disclosure requirement is met because the defendants have caused Plaintiff to be labeled as a threat, barred from the FDIC, Federal employment; and caused negative defamatory information to be placed within the plaintiffs' employment files; and stored within an electronic database. Plaintiff federal personnel files are available, even on a limited basis, to prospective employers or government officials.

It should be noted that in advancing defenses to a Fifth Amendment argument defendants intentionally omitted a challenge to the plaintiffs' assertions that the defendants will continue to disclose results of the investigative interview to 3rd party security agencies, workforce violence institute, and throughout the FDIC community. See Fed.R.Civ.Proc.R.12(g). In any event, the law is clear that the **publication requirement** is satisfied due to the fact that the defendants have placed the information within the plaintiffs' files. See e.g. Kartseva, 37 F.3d at 1528 (availability of unfavorable information to future potential government employers constitutes status change of due process import).

/9

## VII.  **PLAINTIFF IS ENTITLED TO DISCOVERY**

Plaintiff has sufficiently demonstrated that the defendants' Motion to Dismiss should be denied, this Court should permit Plaintiff the opportunity to immediately commence discovery. Courts addressing the type of case set forth herein permit plaintiffs to commence discovery as a routine matter. See e.g., O'Donnell, 148 F.3d at 1139; Orange, 59 F.3d at 1275; Kartseva, 37 F.3d at 1530.

Furthermore, because most of the evidence relating to the plaintiffs' claims are "likely to be exclusively in the possession of the government, it would seem appropriate to accord [plaintiffs] the discovery necessary to this issue." Britt v. Naval Investigative Service, 886 F.2d 544, 551 (3d Cir. 1989).

**Wherefore**, Plaintiff has met standards for a decision against a decision under RULE 12(b)(6), MOTION TO DISMISS. It is this Plaintiff's understanding that courts do not in general favor Rule 12(b)(6) MOTIONS TO DISMISS, because the policy of the federal rules is to allow cases to proceed if there is any reasonable chance that the plaintiff is entitled to relief. Thus, the federal courts require the defendants' to make a very strong showing before a complaint may be dismissed for failure to state a claim.

**Wherefore**, a MOTION TO DISMISS, Rule 12(b)(6) motion tests whether, based only on what is said in the complaint, the plaintiff possibly could be entitled to relief. Courts do not determine whether the facts Plaintiff states are true, but instead assume the truth of Plaintiff's factual statements and decide whether Plaintiff may have a claim that could lead to relief.

**Wherefore**, the Ninth Circuit recently stated, when reviewing a Rule 12(b)(6) motion, a federal court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." See, WARSHAW vs. XOMA, 74 F.3d 955, 957 (9th Cir. 1996).

**Wherefore**, Courts should not dismiss a pro se pleading unless it is absolutely clear that the deficiencies in the pleading cannot be cured by amendment. See, KARIM-PANAHI vs. LOS ANGELES POLICE DEPT., 839 F.2d 621 (9th Cir. 1988). DETERMINING SUFFICIENCY OF COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 12(b)(6), MOTION TO DISMISS

**Wherefore**, to survive a MOTION TO DISMISS under Fed. R. Civ. P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the **TIME**, **PLACE**, and **CIRCUMSTANCES** of the alleged occurrence and which, if proven, will justify some form of relief. See, DOROTHY K. WINSTON & CO. vs. TOWN HEIGHTS DEVELOPMENT INC., 376 F. Supp. 1214 (D. DC 1974) later proceeding 68 FRD 431, 21 FR Serv2d 100 (D. DC 1975)

**Whereas**, Plaintiffs has demonstrated that she is legally entitled to proceed with her complaint before this Honorable Court for its consideration prior to any final judgment being issued.

Respectfully submitted,

Yolanda C. Gibson-Michaels (prose)
2210 Anvil Lane
Temple Hills, Maryland 20748
(301) 630-5062

21

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **5th day of January 2007**, a copy of the

foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss was mailed by

Regular mailed to named defendants; and delivered by fax, YCG-m A
copy was hand-delivered by Night Drop box to the U.S.
District Court, washington, DC @ bm

**Copies to**:

David Zachary Kaufman, Esq.
Kaufman Law Firm, A Professional Corporation
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030
Counsel for Defendants Securiguard, Inc.
  and USEC Corporation

Scott D. Helsel (D
Walton & Adams, PC
1924 Isaac Newton Square
Reston, Virginia 20190

Shelia C. Bair
Federal Deposit Insurance Corporaiton (FDIC)
550 17th Street, N.W. MB-6029
Washington, D.C. 20429

Kathleen Gunning, Counsel and Tina Lamoreaux, Counsel
Federal Deposit Insurance Corporation (FDIC)
3501 North Fairfax Drive
Arlington, Virginia

Jenekia J. Johnson, Prose Defendant
1414 Colony Road
Oxon Hill, Maryland 20748

Douglas R. Fahey
3716 Dalebrook Drive
Dumfries, Virginia 22015-1804

Patricia Del Marvil
Chairman CEO
Securiguard Incorporation
6858 Old Dominion Drive ·· Suite 307
McLean, Virginia 22101

22

David L. Marvil
Chairman CEO
USEC Corporation
7531 Leesburg Pike – Suite 402
Falls Church, Virginia 22101

Robert Feldman, Executive Secretary
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429

*[signature]* 1/3/07
Yolanda C. Gibson-michaels (PNFE)
2230 Anvil Cane
Temple Mills, MD 20748

23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YOLANDA C. GIBSON-MICHAELS )
        Plaintiff, )
         )
       v. ) Civil Action No.1:06CV01933
         )
Douglas R. Fahey, et.al. )
        Defendants )

## ORDER

It is upon consideration of Plaintiff's Opposition to Defendant Motion to

Dismiss is hereby by Granted on this _____ day of _____, 2006.

It is further, ORDERED, that Defendant's Motion to Dismiss is Denied.


_____  _____
Judge


**Copies to**:

David Zachary Kaufman, Esq.
Kaufman Law Firm, A Professional Corporation
11350 Random Hills Road – Suite 800
Fairfax, Virginia 22030
Counsel for Defendants Securiguard, Inc.
  and USEC Corporation

Scott D. Helsel (D
Walton & Adams, PC
1924 Isaac Newton Square
Reston, Virginia 20190

Shelia C. Bair
Federal Deposit Insurance Corporaiton (FDIC)
550 17th Street, N.W. MB-6029
Washington, D.C. 20429

Kathleen Gunning, Counsel and Tina Lamoreaux, Counsel
Federal Deposit Insurance Corporation (FDIC)
3501 North Fairfax Drive
Arlington, Virginia